Good morning, your honor. Martin Molina on appointment from the court on behalf of the appellant in this case, Ivan Alejandro Garcia-Guerrero. I can flush out the issue of this case in a very simple way. This is a case where the government charged Mr. Garcia-Guerrero with violating 18 U.S.C. 545, the importation of the MENS REA, it's a general MENS REA, basically a strict liability, as this court recognizing in Garcia passed, where the only MENS REA element that the government needs to show is that the person knows that he's bringing in merchandise, contrary to law. Yet, despite this, the district court sentenced Mr. Garcia-Guerrero under section 2D1.11 of the guidelines. Which applies to offenses that have a heightened MENS REA, requiring specifically that the defendant knows that he is in possession of a certain list of chemical. Now, under the guidelines... Well, wait, but doesn't it, isn't it more important that those other possible statutes that he could have been charged under requires knowledge that the stuff was going to be used to manufacture or control substances? Yeah, there's a list of statutes under the commentary section to 2D1.11, which are 21 U.S.C. 841, and also under section 940, about six or seven statutes. All of them share... In 960? Yes, in 960, correct. 960D1 and D2. And D1, D2, D3, and D4. And all of them share at a minimum that the defendant knows that he is in possession of a certain list of chemical. Also, most of them, in addition to that, some of those statutes have the additional element that the defendant knows that the precursor chemical will be used in the manufacture of a controlled substance, or that he has reasonable cause to believe that it will be used in the manufacture of a controlled substance, or that he intended to manufacture a controlled substance with those. Those are the mental statutes for the mental states that are required for the statutes that are covered by section 2D1.11 of the guidelines. 2D3.1, the commentary specifically states that it is one of the statutes that it applies to is a violation of 18 U.S.C. 545, which is the statute of conviction in this case. And I should note also that the commentary of 2D1.11 makes no mention of section 18 U.S.C. 545. And this is the... But it does refer to importing, doesn't it? Doesn't the title of 2D1.11 include importing? Well, it does, Your Honor. However, the statutes, this is not a blanket application of all cases involving hypophosphorus acid. If any case involves hypophosphorus acid, it doesn't mean that if any case involves hypophosphorus acid, to use section 2D1.11. There is, the commentary is authoritative on the district courts, and that's by virtue of Stinson v. United States where the Supreme Court held that so long as the commentary doesn't violate the federal constitution, the federal statute, it is, the district courts has to follow the commentary to 2D1, to the guidelines section. 2D1.11 makes no mention of section 545. 2D3.1, the tab statement, makes specific mention of section 545. And this is the classic example of expressio unis est exclusio ulterioris, which is the principle that's been recognized by the Ninth Circuit, which is if something is mentioned in one particular section and not mentioned in another section, it means that the sentencing commission intended the omission to mean that that section will not cover that statute. And this is what the Ninth Circuit recognized in Lawton, and henceforth, it also applies in this case. 2D3.1 mentions 545, 2D1.11 does not. The government and the district court found that because of the cross reference in 2D3.1, subsection C, which states that if the offense involves contraband, that's covered in another guideline section, to apply that guideline section if it results in a higher base offense level. However, for the reasons that I stated before, 2D1.11, that doesn't mean that 2D1.11 automatically applies in this case, where Mr. Garcia Guerrero, in his open plea to the information, only pleaded that he knowingly brought merchandise to the United States without presentation. He did not admit that he knew that he was in possession of a precursor chemical. In addition to that, this cross reference should, as I said, does not mean that automatically the higher, the guideline section with the higher base offense level should apply in this case. This should also be read along with all the guideline section, primarily 1B1.2. 1B1.2 states that if a person pleads guilty to a specific statute, and as part of that guilty plea, he establishes a factual basis that fulfills the elements of a higher, of a more serious offense, to apply the guideline section applicable to that offense. But again, that section under 1B1.2 states if there's a factual basis establishing a violation of the higher offense. Here the factual basis of Mr. Garcia Guerrero's guilty plea to the information was that he knowingly brought in merchandise to the United States. Therefore, 2D1.11 does not apply in this case. And I notice that I have about three minutes and 15 seconds left. Unless your honors have any questions, I'd like to reserve some time for the rebuttal. Very well. Thank you. Good morning. My name is Sherry Hopson. I'm an assistant United States attorney. This is not a situation where the defendant appeared before Judge Whalen, and Judge Whalen said 2D1.11. Judge Whalen went through the analysis of what is required under the advisory guidelines. He went to Appendix A, and there were three potential guidelines. Cultural heritage resources didn't apply. Fish wildlife didn't apply. So the only applicable guideline was the tax guidelines. So when the judge went to the tax guidelines, he looked at the three sections under 2T3.1. He looked at the A, and that focused on tax loss. That dealt with situations where there was an intent to evade the taxes, where it deals with revenue collection. Then you look at B. Does B apply? You're looking at 2T3.1. A. A. No, no. 2T3.1. And you're looking at what? I'm looking at 2T3.1A.  Yes. Base offense level. Base offense level. And the court looked at this and said, okay, tax guidelines. But this case is not about the defendant's intent to evade the taxes. It's not about revenue collection. So let's look at B. Well, does B apply? Well, it doesn't really involve the intent to hide assets or financial accounts. Then he looked at C. There's a cross-reference. And the guidelines have cross-references because the guidelines overlap at times. So the judge looked at C and says, if the offense involves a contraband item covered by another guideline, apply the other guideline if it's higher. And that's what the judge did. The judge said the only section in the entire guideline that deals with hypophosphorus acid is 2D1.11. Well, this acid, that's not labeled as contraband, is it? But it is contraband. Well, is it classified as contraband? Hypophosphorus acid is a Lisbon chemical that's subject to the regulation of the DEA. The DEA regulates the registration. If the offense involves contraband. Well, that chemical is used for many different purposes. But it's subject to regulation when you're importing it into the United States. There's strict regulatory guidelines for exporters. Then don't you have to show that he knew that it was to be used for contraband? What we have to show is looking at what the guidelines say. If the offense involves a contraband item, it doesn't. Answer my question. Don't you have to show he brought this stuff over? It was in this car. And don't you have to show that he knew that what he was bringing over would be used for contraband? No. Because under the section, under 2D. . . You mean this is a strict liability section, you're telling me? Yes. Then why would you ever charge somebody with importing drugs on lawful substances, controlled substances, if you can accomplish the same thing and not have to prove mens rea for that and still get the same sentence? Well, I think . . . Judge Wayland seemed to know this wasn't a very good fit. He tried to make other adjustments. Do you think it's a good fit? I think it's a good fit, and I'll explain why. Because if you look at the steps that's required, under the section it says if the offense involved contraband. And the question is, you don't have to make a finding that . . . No, no, no. I'm not asking about the text of the guideline in the commentary. I'm asking logically. Isn't it true that if we make the adjustment that you described, you wind up in effect being able to convict and sentence somebody for a drug offense without actually having to prove the mens rea for a drug offense? If I charged a 960 or 841, we would go directly to 2D1.11. But wouldn't you have to prove something else, something more than you had to prove here? I would have to prove that the defendant knew that he had merchandise contrary to law under 545. I understand what the court's saying, but we're not here to question the offense as much as what the judge did with sentencing. And the guidelines clearly state that if there's a cross-reference and the offense involved a contraband, so you get to the point saying, is it a contraband? And if you look at the introduction statement and then the subsequent statement in the commentary, it clearly says that this is really not meant, this section, the tax guidelines, are really not meant for a situation where you're dealing with contraband such as drugs. If this was drugs under 545, there's no question 2D1.11 would apply. The same commentary says importation of contraband and stolen goods not specifically covered by this subpart would be a reason for referring to another more specific guideline if applicable or for departing upward is not another more specific applicable guideline. And it suggests to me if applicable really is asking, is that other offense applicable? I don't know that this is an appropriate adjustment if, in fact, you're talking about moving to a sentencing guideline that is intended for somebody convicted of knowingly, of having see enter as to what it is that he's being asked or, in this case, he is bringing in. And that's the question. I mean, ultimately, whether it makes any practical impact on the sentence, I can't say. But our case law requires us to calculate the guideline. And because he did give a guideline sentence here, albeit only after making some additional adjustments, there's at least the possibility that the sentence was affected by the guideline calculation. So the question becomes, should this guideline calculation be done in this instance? And I think there's a fair question that maybe this isn't a very good fit. Well, I think if we look at what's a contraband, I think it's pretty clear that under the facts of this case, and the facts are pretty egregious, that it's contraband. And the defendant was completely aware that it was illegal, unlawful, and he knew that it was an asset. He was getting paid $500 when he makes $400 a month to bring it in. He was nervous. He lied. This is not a tax case. And that's what he's asking. Suppose he was bringing in some substance that violated EPA regulations. What would our sentencing pattern or calculation be in that instance? Well, under the LeBlanc case, the LeBlanc case is a case out of another circuit, but that dealt with a Canadian company that was abating the taxes. It was about a half a million dollars of the taxes of Freon. And the court in that case said, Freon is contraband, so let's look at another offense. And the court ended up using the environmental guidelines and said that the court can depart upward because of the aggravating circumstances. The problem here is that you have hypophosphorus acid, and it is a contraband because it's regulated by DEA. It's not like some of the other precursors where you can have a portion of it. It's completely regulated by DEA, especially for importation. There's strict requirements. And look at the circumstances here. This is clearly going to make 50 pounds of methamphetamine. And when the district court judge looked at it, the court did give the defendant a combination of factor departure based on a mens rea argument that was made by the defense attorney. The court also gave him a role adjustment downward saying, you know what, there's no evidence that you were going to make the methamphetamine. We're going to give you that. So the court did go below the guideline range. The guideline range was 57 months, and the court went down 12 months. So it wasn't a strict guideline case because the court looked at the 35-53 factors too. But 2D1.11. The guideline range is 46 to 57 and gave him 46. No, but that's with a combination of factors departure. Well, that's correct. I mean, he included within the calculation. So he did it in calculating a guideline range. And that's why I say in the end, I don't know that it would make very much difference. And the court also gave him a role adjustment as well. I mean, but 2D1.11 is the only section that deals with hypophosphorous acid, and the caption of that says importing listed chemicals. It doesn't say listed chemicals knowing or having reasonable cause to believe that it's going to be used to make meth. Let me, you see, this is what I don't like about all this sentencing guideline business. It, you know, it tries to be very mechanical. And you look at, you look at, you look at 2D1.11. And unlawfully distributing, importing, exporting, et cetera. A listed chemical attempt or conspiracy. That's the one you're looking at. Yes. Look at B2. It says if a defendant is convicted of violating 21 U.S.C. section 841 C2 or F1 or 960 D2, D3 or D4. Decreased by three levels unless the defendant knew or believed that the listed chemical was used to manufacture a controlled substance unlawfully. So you would have to know that the chemical was to be used by that. Now, was he convicted of 960 D2? No, he was not convicted of any of the offenses that is referenced in that section. But then doesn't it, doesn't it require that he be convicted of that? And to get to 30, should they be charged with a violation of 960 D2? And then you go to 30. You go to this 30 level, which is the next page. Let me see. I think that's the one that lists this chemical. Is that right? Yes. But I think that supports my argument to a certain degree, because in that section, it doesn't say it says if you're convicted of certain offenses, then you decrease by three levels. If the defense is right and they're saying that you have to have one of these convictions for this section to apply, you wouldn't need to have that. You would say for offenses charged in the section. It says that if you're going to get to that 30 classification, you have to be convicted of 960 D2 or blah, blah, blah. But the court didn't. He wasn't convicted of any of those. No, and that's why the court didn't decrease it by three levels. See, that section kicks in if you're convicted of one of the specified offenses, and then you reduce it by three levels. Here, he was not convicted of any of those, so you don't decrease by three levels. But I guess there's two points I wanted to make before I sit down, because I understand where the court is coming from to a certain degree. But the point I'm making is that this is not a tax case. This is not the defendant's intent to evade the law. And he's asking for a zero to six guideline range for tax violations. And you're right, it's mechanical, but it is not a tax case. It is a hypophosphorous acid case where the defendant lied, where the defendant knew that it was illegal. He said he was bringing battery acid at one point, and the question is, we have enough battery acid here. He's getting paid $500 to smuggle the chemicals that he was going to bring. It's the drug transactions, basically. You didn't charge him with a drug transaction. No, no, I didn't, but it's a 545. And looking at 545, it tells you to go to these sections, and it says to cross-reference. So why didn't you charge him with a drug transaction? Well, I could have charged him with a number of different crimes, but the case came in as a 545. The information was filed as a 545. We had a disagreement. The matter was continued three times because we couldn't agree to the guideline calculations. The defendant knew about the government's position regarding the fact that it was a listed chemical, and we had arguments before the district court judge. And I didn't stand up there and say, you know, apply it. I just said, let's go through the analysis. And I can't, I think it's hard for me to believe that under the fact pattern here and what hypophosphorous is, that this is not a contraband. Well, then why didn't you charge it as a contraband? But that begs the issue of going through the analysis. No, it doesn't. You didn't charge it as a contraband. That's why we have to go through all this rigmarole. Well, we went through. Tell me why you didn't charge it as a contraband. Because the case came in as a 545. You're blaming somebody else, not your case. No, the case came in, and we had talked about the 545 charge, and that's what he pledged to. Now, I wouldn't be standing here if I charged the other charge, because the 2D1.11 would be directly applicable. But I'm saying that under the analysis, we're sensing, it's a sensing issue. And the issue is, is it a tax case? Does the tax guidelines apply? Or are there other sections that apply to the guidelines? So what did you do, do a bait and switch on it? No, it's not a bait and switch. It's going through what 545 is. It's a violation of federal law. It's a 20-year maximum. The section under the listed chemical is a 20-year maximum. So I don't know why you didn't charge him with contraband. Because I think the proof beyond that sentencing, the proof is different. We don't have to find proof beyond a reasonable doubt before the sentencing judge. So with all the lies and everything else, you didn't think you could prove beyond a reasonable doubt that it was contraband? No, I don't have to prove that it's contraband. I have to prove contraband if it's under 2T3.1. I have to prove that it's a listed chemical under the prosecution for a listed chemical, knowing or having reasonable cause to believe. Well, that is hard to find that it's a listed chemical. The only place where it references is under 2D1.1. But the analysis starts with the statutory index, and you go to that analysis, and the only way contraband comes up is under that section dealing in the taxes, 2T3.1C. And the mens rea was evaluated and considered by the district court. I wanted to point out that under the base offense level 30, under 2T1.11, all you have to have is 714 grams of hypophosphorus acid. In this case, the defendant had 10 gallons or 47 kilos. So I have a hard time believing that the tax guidelines apply, which is what he's asking, that this is a tax case. Well, then you should have charged them with the contraband. You know, you didn't do that. No, but, Your Honor, what I'm saying is that if you charge a 545, it's not automatically a tax case. You have to go through the analysis. So there is no case law that says 545, tax. You have to apply it. You have to go through the analysis. And if it's contraband that's covered by another section, you go to that other section. That's all I'm saying. And you knew that other section was there? In other words, you knew you could get them to plead to a tax violation, but then you knew that you had this path in there that you could whack them in the end. No, Your Honor, I didn't get him to plead. This matter was continued three times, and we told the judge we have disagreements over which section applies. So this is a case where the defendant pled guilty knowing what the government's position was on going through 2T3.1 and having 2D1.11 kick in. So this is not a switch and bait. The defendant walked into this with his eyes open. He knew what the government's position was at sentencing, and he took his chance, and he lost in district court. But for the defendant to argue that this is a tax case defies logic, given the circumstances of this case. Well, it was charged under a tax statute, wasn't it? It was charged under 545. To begin with. Yes. So why wouldn't he think it wasn't a tax case? Because if there was... When I first read the charging papers, I thought it was a tax case. Why would you think bringing in hypophosphorus acid that makes 50 pounds of methamphetamine a tax case? His intent was not to evade the laws. There is no tax laws. He's getting paid $500. He's getting paid $500 to bring in something that has no tax laws, according to the defense. Now, does that make sense to you? Why would we apply that? This is the problem. This is a very serious precursor chemical. It's used to make meth. This amount makes 50 pounds, and we had affidavits submitted. Well, I'm not saying that this isn't something that can be used to produce a chemical that can cause problems. I'm just asking you why you didn't charge it, what I think would have been the appropriate way to do it, the honest way to do it, at the beginning. You probably didn't think about all this. You didn't think all this thing through. No, Your Honor, I did think it through. That's why we had disagreements about 545. Did you think it through at the time that you drafted the charging papers? Did you? Yeah, because we were going to resolve the case by information. At the time we filed the information, we were going to try to resolve the case, and then we had disagreements over which guideline applied. So, I mean... So you went through all... So what you're telling me is that when you sat down to draft the charging papers, that you had this whole scheme in mind how you were going to approach this, going through all these different steps in the sentencing guidelines. Yes, what happened, Your Honor, was that you look at, when you charge something, you look at what section applies. The defense attorney and I, the defense attorney wrote me a very lengthy letter afterwards explaining that he disagreed that 2D1.11 applied. I think it was like four or five pages. I discussed it with him, and I said, we have a disagreement over which guideline section applies, because I think under 2T3.1... Well, I mean, you're telling me the same thing over again. I just... Just forget about it. Go on. It's not a tax case. It's not an evading taxes. It's under the circumstances. You've told me that three times. I said, just go on. You're 10 minutes over your... I know. I know. Yeah. Thank you. Yeah. This is a guy that had no prior conviction of anything. Do you want to rebut? Yes, Your Honor. So you were... Yes. Were you the guy that was doing the negotiating? Yes, Your Honor. So you knew about all this labyrinth that was going through here? Well, my position from the get-go was that for 545, for him to plead guilty to 545, the applicable guideline was 2T3.1. Were you promoting the government to charge under 545, or did the government make the decision to charge under 545? No, he was charged under 545 by way of a complaint, and he was either going to be indicted or... And so I agreed with the government to plead guilty to the information under 545 and just slug it out at the time of sentencing. This is not a tax case, and I never approached this case saying that Mr. Garcia Guerrero violated the tax law. When you had your client plead guilty, did he know about all of this? Did he know that this was going to be a contraband case, that it was not a tax case, and that he could be subject to a much higher punishment? I advised him of what the issue would be at the time of sentencing. Well, did you take him through the math? In terms of the analysis of the guidance, I did explain to him what our position was and what the government's position was. So as I was saying, I've never presented this case as a tax case. I never argued that it was a tax case. And it is important to note that even though the title says that this is for offenses involving taxation, in the case that I cited in my briefing, Curry-Hernandez, the Ninth Circuit said that that doesn't mean that this is exclusively for tax violations. And, in fact, even the commentaries also support this contention because in the application note number two, it says that particular attention should be given to those items for which entry is prohibited, limited, or restricted. And it talks about dangerous items, harmful items, and so forth. So the Sentencing Commission did not limit this to just tax violations or violation of the tax code. The Sentencing Commission knew that this would encompass more. And, as I said earlier, that's why in its commentary it stated that it applies to violation of Section 545. Another thing that came through in your discussion with government was the fact that Section 2D1411 provides for a minus three adjustment. If the defendant who is convicted under Sections 960 or 841, if the defendant does not know what the intended purpose of the precursor chemical is or does not have actual belief of what the ultimate result of the precursor chemical would be, that it's only for those statutes. It would be anomalous to say that someone convicted of those more serious offenses, 841 and 960, gets the benefit of a minus three if he doesn't know the ultimate result, whereas the person convicted under 545 doesn't get that benefit, which shows the fact that the Sentencing Commission did not intend a violation of 545 to be used or to be analyzed under Section 2D1411. Another one last thing that I should note, Your Honor, is that there's got to be a showing of Mansour El that he knew that he was in possession of a certain listed chemical. And the government concedes that in their briefing. There's got to be a showing, and there was no such showing. And under United States v. Kidd, if the district court is going to use a higher base offense level, and that's a case that involved a quantity of drugs, some of it was for distribution and the other one of which was for personal use, in order for the district court in that case lumped all the amounts together and the Ninth Circuit said you can't do that. You can only use the amount that was proven in terms of the Mansour El, the amount that was used for distribution in determining the base offense level. And I noticed that my time has run out. All right. Thank you very much. Thank you. Well, this matters to me. Well, the next matter.
judges: Holland, Pregerson, Clifton